**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gilbert Leon, | No. CV-19-05881-PHX-MHB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Gilbert Leon's Applications for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 14, "Pl. Br."), Defendant Social Security Administration Commissioner's Response Brief (Doc. 17, "Def. Br."), and Plaintiff's Reply Brief (Doc. 21, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 12, "R.") and now vacates the decision of the Administrative Law Judge ("ALJ") and remands this matter for further administrative proceedings.

## I.     BACKGROUND

Plaintiff filed Applications for Disability Insurance Benefits and Supplemental Security Income on May 11, 2015, alleging a disability onset date of March 3, 2013. (R. at 41.) His claims were denied initially on October 15, 2016, and upon reconsideration on

June 15, 2017. (R. at 41.) Plaintiff appeared before the ALJ for a hearing regarding his claim on March 22, 2018, which the ALJ denied on September 14, 2018. (R. at 41, 53.) On October 29, 2019, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: obesity, diabetes, hypertension, lumbar facet syndrome, degenerative disc disease, lumbar spondylosis, osteoarthritis of the left knee, status post left knee arthroscopy, obstructive sleep apnea, carpal tunnel syndrome, and left plantar fasciitis. (R. at 44.)

Ultimately, the ALJ evaluated the medical evidence and testimony, and concluded that Plaintiff was not disabled from the alleged disability onset date through the date of the decision. (R. at 54.) As part of this finding, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 46.) The ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [Plaintiff] is capable of occasionally stooping, kneeling, crouching, and crawling, but can never climb ladders, ropes, or scaffolds. He can frequently handle, finger, and climb ramps or stairs. [Plaintiff] should avoid concentrated exposure to extreme heat and all exposure to hazards such as moving machinery or unprotected heights. He also requires the option to use a cane for ambulation.

(R. at 47.) Accordingly, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 53.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.

- 2 -

*Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

Plaintiff raises two issues for the Court's consideration. First, Plaintiff argues that ALJ erred in her evaluation of the medical opinion evidence. (Pl. Br. at 13–19.) Second,

1   Plaintiff argues the ALJ erred in her consideration of his symptom testimony. (Pl. Br. at
2   19–25.)

3           **A.**      **Medical Opinion Evidence**

4        Plaintiff contends that the ALJ erred by improperly weighing the medical opinion
5   evidence. Specifically, Plaintiff argues that the ALJ erred in rejecting the assessment of
6   Plaintiff's treating rheumatologist, Dr. Sheetal Chhaya, and by not clarifying the weight
7   she afforded to the state agency reviewing physicians.

8        While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy
9   among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th
10  Cir. 2008). Those who have treated a claimant are treating physicians, those who examined
11  but did not treat the claimant are examining physicians, and those who neither examined
12  nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830
13  (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating
14  source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because
15  treating physicians have the advantage of in-person interaction and typically a longer
16  history of treatment than a claimant's other doctors, and their "subjective judgments . . .
17  are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*,
18  849 F.2d 418, 422 (9th Cir. 1988).

19       An ALJ "may only reject a treating or examining physician's uncontradicted
20  medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc.*
21  *Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such
22  an opinion is contradicted, however, it may be rejected for specific and legitimate reasons
23  that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard
24  by "setting out a detailed and thorough summary of the facts and conflicting medical
25  evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*,
26  881 F.2d 747, 751 (9th Cir. 1989).

27       Here, the ALJ gave minimal weight to Dr. Chhaya's opinion stating, in pertinent
28  part:

Minimal weight is assigned as Dr. Chhaya stated the claimant had uncontrolled diabetes, but this is not corroborated in the treatment records, which raises the question whether additional information provided is similarly unreliable. In addition, on November 29, 2017, she stated the earliest date the limitations applied was November 29, 2017 (Exhibit 21F.) There is no reason to believe the reported restrictions would persist for any 12 month time period. In a fibromyalgia questionnaire, this doctor opined the claimant was limited to sitting for 15 minutes at a time, but the claimant reported during treatment that sitting improved his symptoms (Exhibit 17F and 1F/31).

(R. at 50-51.)

Plaintiff first argues that although Dr. Chhaya's 2016 and 2017 assessments detailed a list of impairments (including fibromyalgia, psoriasis, psoriatic arthritis, osteoarthritis) and symptoms (including chronic pain, nonrestorative sleep, morning stiffness, subjective swelling, fatigue, numbness and tingling/paresthesia), and listed numerous limitations as a result of these impairments, the ALJ failed to provide any basis to discount Dr. Chhaya's opinion set forth in these assessments. The Court agrees.

While the ALJ's reasoning is unclear, it appears that the ALJ relies on an alleged inconsistency between Plaintiff's medical records and Dr. Chhaya's notation of "uncontrolled diabetes," in order to discount Dr. Chhaya's 2016 and 2017 assessments. The Court fails to draw the connection where neither Dr. Chhaya's 2016 nor 2017 assessment lists diabetes as an impairment related to the assessed limitations.

Moreover, the record before the Court provides ample evidence demonstrating that Plaintiff's diabetes had been uncontrolled at various times during the relevant period. (R. at 379, 878, 927, 950, 970, 1160, 1164, 1169, 1127, 1132, 1137, 1148–49, 1156, 1247). Not only does the ALJ fail to mention any of these records, but she fails to cite to any exhibit in support of her finding of an alleged inconsistency in the record. This is clearly not sufficient. As such, the Court finds that the ALJ failed to provide a specific and legitimate reason.

The Court finds the ALJ's second reason for discounting Dr. Chhaya's opinion similarly insufficient. Without citing to any examples or identifying any exhibits, the ALJ

states "[t]here is no reason to believe the reported restrictions [set forth in Dr. Chhaya's 2017 assessment] would persist for any 12 month time period." This unsupported and conclusory statement is directly contradicted by Dr. Chhaya's own confirmation in the same 2017 assessment stating that Plaintiff's "impairment lasted or can they be expected to last at least 12 months." Furthermore, the ALJ completely fails to take into consideration Dr. Chhaya's 2016 assessment, which according to the vocational expert, provided limitations that would preclude work. Thus, the Court finds that the ALJ's reasoning is not specific and legitimate.

In her final reason for rejecting Dr. Chhaya's opinion, the ALJ states that Dr. Chhaya's statement that Plaintiff was limited to sitting for 15 minutes at a time is inconsistent with the treatment records. (R. at 51.) The Court finds that this is a specific and legitimate reason supported by substantial evidence in the record. First, Plaintiff testified at his hearing that he can sit for 45 minutes to an hour. (R. at 79.) He also stated that sitting down is the most comfortable position for him, (R. at 83, 364–65, 367, 473, 479, 484, 528), and reported that sitting did not worsen his pain (R. at 721, 747, 981, 1274, 1281). Accordingly, the ALJ properly concluded that Dr. Chhaya's finding that Plaintiff could only sit for 15 minutes at a time was inconsistent with the record.

In summary, having considered the factors addressed by the ALJ to discount the opinion and assessments of Dr. Chhaya, the Court concludes that the ALJ failed to support her determination with specific and legitimate reasons supported by substantial evidence in the record and, therefore, the Court finds error. Notably, however, the Court finds the inconsistency regarding Plaintiff's ability to sit for longer than 15 minutes at a time significant as it appears that the vocational expert based his finding that Plaintiff would be precluded from all work activity, in part, on the fact that Plaintiff required a sit/stand option.

Plaintiff, lastly, argues that the ALJ provided inconsistent statements regarding the weight assigned to the opinions of the state agency reviewing physicians. (R. at 51; Pl. Br. at 18.) The Court agrees. First, the ALJ afforded significant weight, but then stated that she was unable to afford great weight to the doctors' opinions because evidence suggested that

Plaintiff's impairments were slightly more limiting than what the two doctors concluded. (R. at 51.) These two statements are conflicting. As such, it is unclear what significance the ALJ attaches to the state agency reviewers' opinions.

### B.    Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ erred in rejecting his subjective complaints in the absence of clear and convincing reasons for doing so. (Pl. Br. at 22–26.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *id.* at 1113, or where they suggest that "later claims about the

severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Finally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 47.)

Plaintiff argues that the ALJ used impermissible boilerplate language and did not explain how the medical record was inconsistent with his symptom testimony. (R. at 48; Pl. Br. at 21.) However, the ALJ explained that Plaintiff's treatment notes confirmed his history of low back pain (R. at 48, 337–69, 1054–60), and provided details of the results of Plaintiff's August 2014 x-ray, which showed mild to moderate disc space narrowing, mild spondylosis, and some facet degenerative joint disease (R. at 492–93), and Plaintiff's October 2014 MRI, which showed disc bulges, disc protrusions, bilateral facet arthrosis, and bilateral foraminal narrowing (R. at 490–91). The ALJ went on to explain that because of these results, Plaintiff was diagnosed with lumbar facet arthropathy syndrome, lumbar degenerative disc disease, and lumbar spondylosis without myelopathy. (R. at 48.) The ALJ noted that Plaintiff alleviated his pain with heat, physical therapy, and medication up until this point. (R. at 48.) The ALJ also noted that Plaintiff's pain "improved tremendously" after receiving medical branch blocks, and that his gait was non-antalgic and "he was able to walk without an assistive device, his lumbar range of motion was grossly within normal limits, and his strength was five bilaterally in his lower extremities."

(R. 48, 337–69.) Finally, the ALJ noted that over the years Plaintiff went to several spine surgeons who all only recommended conservative care. (R. at 48, 472–97.) The ALJ opined that Plaintiff's conservative treatment and his response to the treatment indicated that Plaintiff's symptoms were not as severe as he alleged. (R. at 48.) An ALJ may properly discount a claimant's symptom testimony based on its inconsistency with a claimant's improvement with treatment. 20 C.F.R. § 404.1429(c)(3)(iv); *see Tommasetti*, 533 F.3d at 1040. The Court finds that the ALJ provided a clear and convincing reason supported by substantial evidence in the record.

Similarly, the ALJ noted that Plaintiff was advised by medical providers to use wrist splints for his carpal tunnel syndrome, diabetic shoes for his plantar fasciitis, and was placed on a CPAP machine for his obstructive sleep apnea. (R. 48, 394, 885–86, 901–05.) The ALJ found that while these impairments resulted in work-related restrictions, the record failed to support a finding that Plaintiff was as limited as he alleged. (R. at 48.) Additionally, the ALJ explained that when Plaintiff is on medication for his hypertension, he has no problems. (R. at 48, 976–1024, 1106–13.) The ALJ also noted that Plaintiff was diagnosed with diabetes in 2014 and he reported that his condition was under control in March 2015. (R. at 48, 412.) The ALJ documented this medical evidence to demonstrate that Plaintiff's "obstructive sleep apnea, hypertension, and diabetes are all being managed medically and should be amenable to proper control by adherence to recommended medical management and medication compliance." (R. at 49.)

As to Plaintiff's knee pain, the ALJ identified that in December 2015, an x-ray revealed moderate osteoarthritis and a meniscus tear of the medial side of the left knee and Plaintiff was referred for cortisone injections, braces, and physical therapy. (R. at 525–44.) Plaintiff's knee condition initially failed to respond to conservative treatment, and in April 2016, Plaintiff had a left knee arthroscopy. (R. at 718–52.) Plaintiff continued to report pain. However, in May 2016, Plaintiff demonstrated no significant joint swelling, no tenderness, no palpation, and his range of motion was within functional limits. (R. at 370–410, 670–91, 718–52, 976–1024, 1106–13.) The ALJ noted that Plaintiff's knee has

continued to improve since the surgery. (R. at 49, 718–52.)

The Court, thus, finds that the ALJ provided a thorough analysis of Plaintiff's medical conditions and explained how these conditions are being managed. The Court finds the ALJ provided a clear and convincing reason supported by substantial evidence in the record.

Next, the ALJ found that Plaintiff's activities of daily living did not corroborate the level of severity that Plaintiff alleges. (R. at 49.) The ALJ explained that Plaintiff prepares his own meals, drives himself places (about two times a week) (R. at 69), shops for groceries, performs household chores, does laundry, loads and unloads the dishwasher, bikes, attends doctor's appointment, and manages his own finances (R. at 50, 261–67). The ALJ noted that Plaintiff was well nourished, well developed, friendly, engaging, cooperative, quiet, lucid, alert, oriented, awake, pleasant, and in no acute distress. (R. at 50, 262–65, 427, 434, 439, 498–503, 506, 512, 515, 517, 519, 521, 523, 676–77, 680, 687, 690, 767–876, 1025–27.) The ALJ also noted that Plaintiff adopted his minor grandson. (R. at 50.) The ALJ reasoned that Plaintiff's adoption indicates that he retains the ability to care for himself and that he can also care for other people. (R. at 50.)

The Court finds that on this point, the ALJ has failed to provide a clear and convincing reason. Rather than explaining how Plaintiff's activities detract from Plaintiff's testimony, and providing an analysis of why Plaintiff's activities were inconsistent with the limitations asserted by Plaintiff, the ALJ simply provides a listing of activities and implies that said activities are performed consistently and regularly over an eight hour day. The Court finds that this type of analysis is insufficient. *See Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (citing *Fair*, 885 F.2d at 603). Further, as to the adoption of his grandson, the ALJ did not inquire as to what Plaintiff did to help when it came to his grandson. Without any additional information, the fact that Plaintiff cares for a minor child "does not constitute an adequately specific conflict with [his] reported limitations." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017).

In summary, the Court finds that although the ALJ's reliance on Plaintiff's daily activities to detract from Plaintiff's credibility is not sufficient, the ALJ has identified other factors that provide sufficient reasons to discount Plaintiff's credibility. Thus, the Court concludes that the ALJ has supported her decision to discredit Plaintiff's credibility with specific, clear and convincing reasons and, therefore, the Court finds no error.

## IV.    CONCLUSION

The Court may remand for further administrative proceedings, as is the "ordinary remand rule," or it may remand for calculation and award of benefits under the "credit-as-true" rule. *Treichler*, 775 F.3d at 1099–1100. However, the latter is "a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). For the Court to remand for award of benefits, three conditions must be satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. However, even where each condition is satisfied, the Court may still remand for further administrative proceedings if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Here, the Court finds a remand for further administrative proceedings is most appropriate here given the conflicts in opinion evidence and symptom testimony, and the fact that the Court finds doubt as to whether Plaintiff is actually disabled as alleged.

\\\

\\\

\\\

\\\

\\\

\\\

- 11 -

1    **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is
2  vacated and this case is remanded for further administrative proceedings;
3    **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment
4  accordingly and terminate this case.
5    Dated this 21st day of December, 2020.
6
7
8
9
                                           Honorable Michelle H. Burns
10                                         United States Magistrate Judge
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28